## THEODORE D. PARKER *versus* WILLIAM BRANCKER
## *et al.*

In an action for money had and received, brought by a consignee to recover back
a balance of advances beyond the net proceeds of the goods consigned, the con-
signor introduced evidence by way of defence, though objected to by the consignee,
to prove that the consignee could and ought to have sold the goods at a certain price
limited by the consignor, but a verdict was found in favor of the consignee and
judgment rendered thereon ; and afterwards, in a cross action by the consignor
against the consignee for omitting to sell at the price limited and afterwards selling
below the price limited, the consignee gave in evidence such verdict and judgment.
It was *held*, that the evidence introduced by the consignor in the former suit had
been rightfully admitted, but that whether it was admissible or not, yet as it had
been in fact admitted, the verdict and judgment in that suit were competent evi-
dence for the consignee in the cross action.

A commission merchant having received goods to sell at a certain limited price, and
made advances upon them, has a right to reimburse himself by selling them at the
fair market price, though below the limit, if the consignor has refused, upon appli-
cation and after a reasonable time, to repay the advances.

In July, 1832, Parker, the plaintiff, consigned to Brancker,
Delius & Co., the defendants, commission merchants in Ham-
burg, 1640 bags of coffee, on which, according to a previous
agreement, Brancker, Delius & Co. made large advances
Parker sent a letter of instructions limiting the sale at a cer

tain price. Brancker, Delius & Co. afterwards brought a suit against Parker, to recover the amount of their advances. The coffee had not then been sold, but having been sold pending the suit for a sum less than the advances, expenses and interest, credit was given in the suit, for the net proceeds. In that suit, Parker offered evidence tending to show that Brancker, Delius & Co. could and ought to have sold the coffee at the limit, in September, 1833, before the commencement of that suit. To the admission of this evidence the counsel of Brancker, Delius & Co. objected, but it was admitted. The jury found a verdict in favor of Brancker, Delius & Co. for the amount of the advances, expenses and interest, deducting the net proceeds of the coffee. Upon this verdict judgment was rendered. Pending that suit, the coffee having been sold by Brancker, Delius & Co. at a price much below the limit, Parker brought the present action, in which he claimed damages of them, 1. for not selling the coffee at the limit, in September, 1833 ; and 2. for afterwards selling it below the limit, after having commenced their action to recover back their advances.

In answer to the claim for not selling at the limit, the defendants offered, with other evidence, the judgment in the former suit, and proof that the same matter had been submitted to the jury in the defence of that suit ; to the admission of which the plaintiff objected, on the ground that the former suit being for money had and received, evidence of a breach of orders in not selling at the limit was inadmissible, and therefore that proof that it was submitted to the former jury was inadmissible in the present case. But the Chief Justice, before whom the action was tried, admitted the evidence, reserving the question for the whole Court.

In support of the second claim, for selling the coffee below the limit, the plaintiff introduced the letter of instructions sent with the consignment, dated the 7th of July, 1832, fixing the limit at sixty shillings the hundred weight, and the answer of the defendants, dated the 21st of August, 1832, acknowledging the receipt of the orders and accepting the consignment. Also a letter from the plaintiff to the defendants, dated in February, 1833, reducing the limit to fifty-eight shillings. Also

the writ in the former suit, by which it appeared, that on the 14th of June, 1834, the defendants commenced that suit and directed the sheriff to attach property to the amount of $3500, which was done. The plaintiff also proved, that on the 21st of October, 1834, and pending the former suit, the defendants sold the coffee at a price very much below the limit, and that in the following spring coffee rose to a considerably higher price than that at which the plaintiff's coffee had been sold ; and the plaintiff claimed the difference between the actual sales and the price which the article would have brought in the following spring.

The defendants contended, 1. that they had exercised due care and diligence in the sale of the plaintiff's coffee ; that there was no period when they could have realized the price limited by the plaintiff, and especially they could not do so in September, 1833.—2. That the question of due diligence and ability to realize the plaintiff's limit in September, 1833, had been submitted by the present plaintiff to the jury in the former suit ; and had been found against him. 3. That at divers times, and especially in June, 1834, the defendant's agent demanded payment of the plaintiff for a portion of the sum advanced, which was not complied with. 4. That the plaintiff, in June, 1834, fixed on the autumn of that year as the period when he wished the sale of his coffee to be made, and it was actually kept till that time by the defendants and then sold to the best advantage at the then market prices.

In support of these allegations the defendants read certain depositions and letters ; also a report of the former suit, and the bill of particulars, verdict, judgment and execution therein.

Upon the evidence in the case the Chief Justice instructed the jury, that a commission merchant, having received goods to sell at a certain limited price, and made advances upon such goods, had a right to reimburse himself by selling such goods at the fair market price, though below the limit, if the consignor refused, upon application and after a reasonable time, to repay the advances. To this instruction the plaintiff excepted, and the question was reserved.

*March 13th.*    *F. Dexter*, for the plaintiff. The verdict in the former action was not admissible in evidence to prove that Brancker,

Delius & Co. could not have sold the coffee in 1833, at the price limited, for Parker had no right to submit that question to the former jury. Had the fact been found in his favor, it would not have been a defence to an action for the advances. The causes of action in the two cases were quite distinct, and were proper for two separate actions. To render a verdict admissible in evidence, the former issue must include the issue on trial. *Manny* v. *Harris*, 2 Johns. R. 24 ; *Gardner* v. *Buckbee*, 3 Cowen, 120.

The defendants were not authorized by law to sell under the plaintiff's limit, and at a time when the price of coffee was extremely low, and after they had secured their demand by an attachment. They accepted the consignment under an agreement not to sell for less than the price limited. According to the instruction to the jury, a consignee may wholly disregard the limit, if his advances are not reimbursed within a reasonable time. If this be so under an open consignment, the convention of the parties takes this case out of the rule. But in regard to an open consignment the rule is otherwise. The consignee has a lien, not a pledge, and it is his duty to sell at such time as will be most beneficial to the consignor. No doubt the consignee is entitled to recover back his advances, but his remedy is by suit and attachment ; and this remedy the defendants adopted. If they can attach and sell too, they may attach to a greater amount than the whole sum advanced. Can any rule of law justify such an attachment and a sacrifice of the consigned property besides ? Although he may attach the very property consigned, yet there he acts as a creditor ; but in selling he acts as agent, and he is bound to sell for the benefit of the consignor, and not to secure himself.

*C. P. Curtis*, for the defendants. The verdict and judgment in a former action between the same parties are admissible in evidence, if the same point was decided in the former action, and parol evidence is admissible to prove that fact. *Eastman* v. *Cooper*, 15 Pick. 276. The evidence introduced in the action of Brancker, Delius & Co. against Parker, was strictly admissible ; but if not, yet as it was in fact admitted, the verdict and judgment are proper evidence in this case.

*Dodge* v. *Tileston,* 12 Pick. 328 ; *M'Lean* v. *Hugarin,* 13 Johns. R. 184 ; *Wilder* v. *Case,* 16 Wendell, 583.

The defendants were justified in selling below the plaintiff's limit, after reasonable notice to him to refund their advances. It was formerly supposed that a pledge could not be sold except upon a bill of foreclosure, but the law is now settled otherwise ; *Hart* v. *Ten Eyck,* 2 Johns. Ch. R. 100 ; and the rights of a foreign consignee over goods upon which he has made advances, are more extensive than those of a pledgee. A deviation from the plaintiff's instructions was justified by a change in the circumstances. 1 Livermore on Principal and Agent, 368, 369 ; *Day* v. *Noble,* 2 Pick. 616 ; *Drummond* v. *Wood,* 2 Caines's R. 310.

*April 1st*       WILDE J. delivered the opinion of the Court. Upon the facts reported, the plaintiff, at the trial, rested his case on two grounds :

1. That the defendants did not sell the coffee consigned to them at the limit, in September, 1833, when they might have so done. And 2. That they afterwards, and after having commenced an action to recover back their advances, sold the same below the limit.

In answer to the first ground of action, the defendants offered in evidence the judgment they recovered in the former suit, with the proof that the same matter now in dispute had been submitted to the jury in defence of that suit.

To the admission of this evidence the plaintiff's counsel objected, on the ground that the evidence in the former action had been improperly admitted. If this was so, and the judgment had been pleaded as an estoppel, or had been offered as conclusive evidence against the plaintiff on this point, the objection might have been well founded. But as the judgment was not offered as conclusive evidence, and was not so considered, we have no doubt that it was competent evidence, with the accompanying proof, to be left to the jury with the other evidence in the case, although it could now be made to appear that the evidence admitted in defence in the former action was not legally and properly admitted.

We have however no doubt that it was legally admitted, and that the present plaintiff had the right to make the defence he

was allowed to make in the former action. We consider this point settled by the case of *Dodge* v. *Tileston*, 12 Pick. 332.

The rule adopted in that case is a salutary rule, as it tends to prevent circuity or multiplicity of actions, and the accumulation of costs. It is indeed difficult to imagine a case in which it can operate to the prejudice of either party ; not to the defendant, for it is optional with him to make such a defence or not ; nor to the plaintiff, for generally to him it would operate beneficially, by saving him from the expense of a cross action. The only objection that can be made, is, that the plaintiff may be surprised by such a defence. But the Court will take care that he shall not be prejudiced by surprise. And he cannot well be, unless through his own negligence, for he has the right to require the defendant to give notice of all matters he intends to rely on in his defence.

2. In answer to the second ground of action, namely, that the coffee was sold below the plaintiff's limit, the defendants proved, that in January, 1833, they wrote to the plaintiff, complaining of being kept so long under advances, and requiring repayment or further security ; and that at different times afterwards, and especially in June, 1834, they demanded payment of a portion of the advances, which was not complied with. In that month the defendants commenced their action for the repayment of their advances, and as additional security, caused the present plaintiff's property to be attached to the value of $3500. The plaintiff then requested the defendants to delay the sale of the coffee until the fall sales of that year, and it was accordingly delayed until that time, when it was sold.

According to this evidence, there can be no doubt that the defendants had a right to sell the coffee, and that the verdict is fully sustained by the evidence. It was moved to set aside the verdict, as against the weight of the evidence ; but this motion has been waived, and the plaintiff's counsel rely solely on the exception taken to the instructions to the jury. The jury were instructed, " that a commission merchant, having received goods to sell at a certain limited price, and made advances upon such goods, had a right to reimburse himself by selling such goods at the fair market price, though below the limit, if the

consignor refused, upon application and after a reasonable time, to repay the advances."

The rule of law thus laid down, appears to the Court to have been stated with perfect accuracy, and with all the qualifications which are applicable to the defendants' right of sale, as claimed by them on the evidence.

The law appears to be well settled, both in England and in this country, that the pledgee of personal property, after the debt becomes due, may sell without a judicial process and decree of foreclosure, upon giving reasonable notice to the debtor to redeem.

It was so decided in *Tucker* v. *Wilson*, 1 P. Wms. 261, and in *Lockwood* v. *Ewer*, 2 Atk. 303. The same rule of law was laid down in *De Lisle* v. *Priestman*, 1 Brown's Penn. R. 176, and in New York by Chancellor *Kent*, in *Hart* v. *Ten Eyck*, 2 Johns. Ch. R. 100, and again in his Commentaries ; 2 Kent, (3d edit.) 582.

The principle thus settled seems to be founded in good sense, and may be essentially necessary to enable the pledgee to avail himself of his pledge, in a reasonable manner, for the discharge of his demand.

In the present case the defendants were not merely pledgees, but they were expressly authorized to sell the property consigned to them, and thereby to reimburse themselves for their advances. There was no time limited within which the sale was to have been made. The defendants were, therefore, bound by their acceptance of the consignment, to wait a reasonable time, if the sale could not be made for the price limited, although by the delay their security might be impaired.

But after such a reasonable time had elapsed, and a demand had been made upon the plaintiff to repay the money advanced, and he had refused so to do, he had no further power, by any principle of law or justice, to control the defendants' right of sale to their prejudice. Such a power would be inconsistent with the understanding of the parties as it must be presumed to have been when the advances were made ; and it would enable the plaintiff to impair the defendants' security, at his own will and pleasure for an unlimited time, if he were disposed so to do. To sanction such a right, would operate injuriously on

Parker
*v.*
Brancker.

the interests of consignees, and would check the continuance of those large advances, by the aid of which a flourishing trade has been carried on, for years past, to the great profit of the mercantile community. For although such advances may sometimes lead to overtrading, and may induce individuals to venture upon rash speculations, yet it cannot be doubted, that on the whole they have contributed to the increase of the wealth and prosperity of the country. The principle, therefore, involved in this case is of great importance, and has been considered by the Court with great care.

In respect to the argument in relation to the attachment, we do not think it can in any way affect the defendants' right of sale. The attachment was made for the purpose of strengthening the defendants' security. And they attached property to the amount which was supposed sufficient, with the proceeds of the sale of the coffee, to repay their advances, and no more. And this was done so as not to injure or embarrass the plaintiff by a heavy attachment. If the defendants had attached property to the full amount of their advances, while they continued to hold the property consigned, the plaintiff might well complain. If the plaintiff was 'able to secure the defendants for their whole advances, he ought to have offered the security voluntarily, if he wished to control the defendants' right of sale. But it does not appear that he did wish the sales to be delayed beyond the fall sales of 1834, and the coffee was not sold until that time.

Under these circumstances, we cannot think that the plaintiff has any just cause to complain of the insufficiency of the attachment to secure their advances. The defendants alone suffer from the insufficiency, for by the fall of the price of the coffee, there is, as we understand, a balance still due to them which remains unsecured. But however this may be, we are of opinion that the defendants did not by their attachment relinquish their lien on the coffee and their right of sale, and that consequently they are entitled to judgment on the verdict.